JAMES EATON *v.* STATE OF ARKANSAS

CR 73-85                                  498 S.W. 2d 648

Opinion delivered September 10, 1973

*Ike Allen Laws Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Philip M. Wilson,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. James Eaton was charged on information filed by the prosecuting attorney with delivering to Johnnie Rivers a quantity of marijuana in excess of one ounce with the intent to unlawfully deliver and cause same to be unlawfully delivered to other persons. He was convicted at a jury trial and was sentenced to five years in the penitentiary with four years suspended.

On appeal to this court Eaton contends that the trial court erred in not directing a verdict of acquittal

or in not granting his motion for a new trial on the ground that the only evidence against the defendant was an uncorroborated oral statement made to police officers in the course of investigation. We agree with the appellant that his conviction must be reversed and the cause remanded for a new trial.

It appears from the record that in the course of investigating the marijuana traffic among students at Arkansas Polytechnic College at Russellville, six bags or "lids" of the substance were found in the possession of Tommy Gooch. Gooch implicated Johnnie Rivers as the person from whom he obtained the marijuana. Rivers entered a plea of guilty to a charge of selling to Gooch and apparently Rivers implicated Eaton as the person from whom he obtained the marijuana. Eaton was arrested and his house was searched by the police officers and he was subsequently charged as above set out.

The record indicates that the state intended to use Rivers as a witness against Eaton and in corroboration of statements made by Eaton to the police officers but, at the trial, Rivers denied that he had ever told the prosecuting attorney or anyone else that he acquired marijuana from Eaton. At some point in the proceedings Rivers' parents employed Eaton's attorney to represent Rivers and when Rivers was asked the direct question as to whether he had in fact purchased marijuana from Eaton, he refused to answer the question on advice of his and Eaton's attorney as in violation of his constitutional right against self-incrimination.

Detective Jerry Snow was then called as a witness for the state and the prosecuting attorney requested an exclusionary hearing in chambers. At the in-chambers hearing Detective Snow testified that after Eaton was arrested, Eaton stated in his presence that he had sold ten lids of marijuana to Rivers for $10 per lid, but that Eaton refused to say from whom he obtained the marijuana. Detective Snow said he reduced the statement to writing but that Eaton refused to sign the written statement without his attorney being present. The full statement as written out by Detective Snow appears as follows:

"James Eaton. About a week and a half ago—I don't

remember the exact date— I sold Johnnie Rivers ten lids of Marijuana. I sold it to Rivers for $10.00 a lid. Rivers didn't pay me then, but he was to pay me later. I figured he was going to sell it, but I didn't know who. I would rather not say who I bought the marijuana from."

The record of the in-chambers hearing then becomes somewhat confusing and appears as follows:

"MR. LAWS: I think it is obvious he refused to sign the statement right at the time. It is not a voluntary statement.

THE COURT: The Court will admit it. Save your exceptions.

MR. LAWS: For the purpose of the record and without waiving my client's rights, this is an exclusionary hearing we are in, and I can ask him questions without waiving any of my rights.

THE COURT: Let's cross one bridge at a time please.

MR. LAWS: Are you going to refuse to allow me to have my client explain the circumstances surrounding this statement?

THE COURT: No, sir. If he denies the statement, and I am assuming that is what he is fixing to do.

MR. LAWS: No, he is not going to deny the statement, but I have a right to show whether or not the statement is voluntary and have something for the Court to pass on.

THE COURT: Do you want me to do it out here?

MR. STREETT: I thought you were denying it. We have no objections to putting it on.

THE COURT: If it is a denial, let's go. If it is something for the Court to pass on, let's go.

MR. LAWS: It is a question whether or not this was a voluntary statement.

THE COURT: That's a question for the jury.

MR. STREETT: We have no objections to the Court passing on whether or not it was voluntary.

THE COURT: I have admitted the statement.

MR. LAWS: Are you going to admit the statement without testimony?

THE COURT: I have admitted the statement. From here on out then if there is something to show it was involuntary, it is a question of fact.

MR. STREETT: We have no objections. I thought he was denying making the statement. If he makes a statement it was under coercion, or —

MR. LAWS: We feel like the facts surrounding the confession it is whether or not the Court—especially due to the fact that the law requires the Court to look at a signed confession, and —

THE COURT: All right.

MR. LAWS: Without waiving rights, other than the circumstances not surrounding the confession, I would like to call my client."

James Eaton then testified at the in-chambers hearing and denied making the statement at all. He said he was shocked and confused at his arrest; that the officers advised him it would be better for him if he would "come clean"; that they threatened to "hang him from the highest tree" and make an example of him. On cross-examination Eaton testified in part as follows:

"Q. You did make the statement that has been referred to here?

A. If I did—

Q. Did you?

A. No, sir, I did not.

Q. You didn't? Are you saying that under oath today? That you didn't make the statement that has been referred to here?

A. No, sir.

Q. Do you recall having your rights read to you?

A. Yes, but I didn't understand them.

Q. What was it you didn't understand?

A. I didn't understand any of it really.

Q. You said at the time you did, did you not, that you understood?

A. I don't recall saying it."

At the close of the in-chambers hearing the trial court ruled as follows:

"The Court is going to admit the statement. Save your exceptions. The whole thing in chambers here becomes a question of fact for the jury to determine. It is a question of fact whether they took it or didn't take it."

Detective Snow then testified in open court in part as follows:

"Mr. Eaton stated that he had sold ten lids of marijuana to Johnnie Rivers, that Johnnie Rivers had not paid him for this marijuana, that it was to be paid for later, that he did not know what he was going to do with it, or where he was going to sell it, that he would rather not tell us where he had obtained it himself."

Detective Sergeant William Briscoe also testified in corroboration of Detective Snow's testimony as to the statement made to them by Eaton. The appellant James Eaton did not testify before the jury.

It is clear from the record before us that the prosecuting attorney was taken by surprise at Rivers' denial of

having previously implicated Eaton as the one from whom he purchased marijuana and by his refusal to testify under advice from his and Eaton's attorney as to whether he had made such purchase from Eaton. The record is not clear as to the basis for Rivers' fear of self-incrimination by testifying as to whether he purchased marijuana from Eaton. Rivers had been convicted on a guilty plea of selling marijuana to Gooch and his and Eaton's attorney explained Rivers' refusal to testify in the following language:

> "First of all, after Mr. Rivers' parents and Mr. Streett had a little misunderstanding the other day they came to me, as an attorney, and asked me to represent them. As such, they gave me information and asked me whether or not their son had the right to take the Fifth Amendment. He pled guilty and was convicted in Pope County of selling part of this marijuana *he got from my client.*

> THE COURT: This man was convicted of selling?

> MR. LAWS: He wasn't charged with purchasing from Eaton. He was charged and convicted of selling a part of it to somebody else." (Emphasis added).

The record indicates that other pertinent evidence would have been available to the state had the state's attorney known that Rivers would refuse to testify on advice of his and Eaton's attorney. But as the record now stands, there was no evidence presented connecting Eaton with the sale or delivery of marijuana to Rivers except the testimony of Detective Snow and Briscoe that Eaton had told them he had made such sale.

Ark. Stat. Ann. § 43-2115 (Repl. 1964) reads as follows:

> "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

In the case at bar there was no evidence that marijuana was sold or delivered to Rivers by anyone. The

judgment of the trial court is reversed and this cause remanded for a new trial.

Reversed and remanded.