Joe Henry JOHNSON *v.* STATE of Arkansas

CR 88-88                              770 S.W.2d 128

Supreme Court of Arkansas
Opinion delivered May 15, 1989
[Rehearing denied June 12, 1989.]

618

*Lohnes T. Tiner* and *Chet Dunlap*, for appellant.

*Steve Clark*, Att'y Gen., *Lynley Arnett*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This is a second appeal of a rape conviction. Appellant was arrested in April 1985, and charged with the rape of his nine-year-old stepson. A jury trial was held and appellant was found guilty and sentenced to forty years imprisonment. The conviction was appealed and in *Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 817 (1987), the case was reversed.

In *Johnson I*, the victim had reported to several individuals, including his mother and a physician, that he had been sexually molested by appellant, but at trial he testified he had made up the accusations because he was mad at appellant for not taking him fishing. An examining physician, Dr. Kemp, testified the boy had told him the appellant had engaged in anal and oral intercourse with him. He further testified that he believed the boy was telling the truth. Others testified that the boy had made similar accusations as those told to the doctor and that the boy had recanted the accusations but then renewed them. We reversed because the trial court had permitted Dr. Kemp to state an opinion as to the truthfulness of the boy's statements, which we said was not beyond the understanding of the jury. However, we upheld Dr. Kemp's testimony of the victim's accusations under A.R.E. Rule 803(25).

At the second trial, the state again introduced testimony by Dr. Kemp, but without his opinion as to the victim's truthfulness. The state also presented the testimony of two officers who had questioned the appellant. Both officers testified that appellant had admitted to them that he had engaged in both oral and anal intercourse with the boy. The appellant testified, denying the charge, and the victim testified, denying the truth of his original accusations, and again explaining that they were prompted by his anger at the appellant.

The jury found appellant guilty and sentenced him to fifteen years in the Department of Correction. From that judgment,

appellant brings this appeal, arguing four points for reversal.

Appellant first argues the trial court committed reversible error by not granting a directed verdict, contending there was no evidence in the record, apart from the confession, that any crime had been committed. Appellant argues that there must be corroboration of a confession to sustain a conviction, and in this case the only evidence in addition to his confession was Dr. Kemp's testimony of what the boy had told him, the truth of which the boy now denied. Furthermore, appellant points out that the doctor testified that from his examination of the boy there was no physical evidence that anal intercourse had occurred. We cannot sustain the argument.

■■ Unless made in open court, a defendant's confession standing alone will not support a conviction except where "accompanied by other proof that the offense was committed." Ark. Code Ann. § 16-89-111(d). The test of correctness under this statute is not whether there was sufficient evidence to sustain a conviction, but whether there was evidence that such an offense was committed, or, in other words, "proof of the corpus delicti." *Sawyer v. State,* 284 Ark. 26, 678 S.W.2d 367 (1984).

The other proof that the offense was committed came from the testimony of Dr. Kemp, who testified that the boy told him he had been having sex with appellant. When the doctor asked him what he meant, the boy told him the man had put "his thing in my bottom," pointing to his penis and his anal opening to clarify what he meant. The boy told him it had happened "lots of times." The doctor further stated that he had made a complete physical exam and that the results were normal, and while he saw no signs of injury nor anything to indicate anal intercourse, he also stated that neither could he rule out anal intercourse on the basis of his examination.

Prior to the adoption of A.R.E. Rule 803(25), the doctor's testimony as to the boy's statements would have been hearsay, but this was changed by the rule, and such statements, if they meet the criteria set out by the rule, will not be excluded as hearsay. In *Johnson I* we considered an attack on the constitutionality of the rule based on due process and equal protection arguments. We rejected those contentions, not on their merits, but for lack of supporting authority cited by the appellant. *Dixon v. State,* 260

Ark. 857, 545 S.W.2d 606 (1977). In this appeal, neither Rule 803(25) nor the admissibility of the boy's statements is challenged. The boy's statements, as exceptions to the hearsay rule, can of course serve as substantive evidence. E. Clearly, *McCormick on Evidence*, § 251 at 744 (3d ed. 1984). Appellant does not dispute this point but simply argues the evidence as a whole is insufficient as a matter of law.

■ The appellant wants us to disregard the boy's statement to the doctor and others because he recanted them under oath. He argues the only "substantial" evidence the jury heard was the boy's sworn statement the abuse did not occur. But the boy admitted he told the doctor and others that the abuse did occur and those statements were received as evidence and were substantial in nature. Hearsay evidence, when admitted, is substantial evidence that will support a verdict. *Ply* v. *State*, 270 Ark. 554, 606 S.W.2d 556 (1980); *Boone* v. *State*, 264 Ark. 169, 568 S.W.2d 229 (1978).

Appellant maintains that in this case there should be corroboration by some physical evidence. We disagree. Appellant has pointed to no authority for this position and we can find none. The rule as long applied has never contained a requirement of that nature and has in fact been applied when it is clear there is no physical evidence to corroborate the victim's testimony. As recently as *Cope* v. *State*, 292 Ark. 391, 730 S.W.2d 342 (1987), we upheld a rape conviction on the testimony of a six year old victim. There was no physical evidence and no testimony by any other witnesses. Similarly in *Waterman* v. *State*, 202 Ark. 394, 154 S.W.2d 813 (1941), a conviction for carnal abuse was sustained on the testimony alone of a girl less than fourteen years old. No other evidence was presented and this court held the evidence sufficient. *See also, Bond* v. *State*, 63 Ark. 504, 39 S.W. 554 (1897).

■ The question in this case, however, is not whether the boy's statements alone are sufficient to convict, but whether they offer sufficient corroboration of the appellant's confession. Given the foregoing authority of uncorroborated statements being sufficient evidence in themselves to convict, we have no doubt that the boy's statements are sufficient to corroborate appellant's confession under § 16-89-111(d) which requires a lesser standard

of evidence. *Sawyer* v. *State, supra.*

When the defense presented its case, the boy testified that what he told Dr. Kemp was untrue and that he had fabricated the story because he was mad at appellant. Appellant argues that this testimony should change the result and cites us to *Eaton* v. *State*, 255 Ark. 45, 498 S.W.2d 648 (1973). That case, however, is easily distinguishable, as the *only* evidence presented by the state in *Eaton* was the confession of the defendant.

Aside from the *Eaton* case, the victim's recantation offers no obstacle to our decision. The Eighth Circuit considered a similar factual situation and arrived at the same result. In *United States* v. *Renville*, 779 F.2d 430 (8th Cir. 1985), the appellant was accused of sexual abuse of his eleven year old stepdaughter. A doctor and a deputy sheriff were allowed to testify as to statements made by the girl, identifying the stepfather as her abuser. The victim also testified, recanting her earlier accusations and denying having told anyone except the deputy sheriff that appellant was the abuser. As to the child's recantation the court said, "Although the declarant testified at trial that these earlier statements were lies, this simply provided the jury with a routine question of credibility." *Id.* at 440. The court also pointed out that it was significant that the declarant admitted she made the out-of-court statement to the deputy, making this a very different situation from that where the declarant testifies that an earlier inconsistent statement was never made, raising concerns of manufactured evidence. *Id.* at 440.

So, in the case before us, any inconsistencies presented by the victim's testimony were for the jury to resolve. *Cope* v. *State*, 293 Ark. 524, 739 S.W.2d 533 (1987); *Ellis* v. *State*, 279 Ark. 430, 652 S.W.2d 35 (1983); *United States* v. *Renville, supra.* In addition to other indicia of reliability as established by the trial court under A.R.E. Rule 803(25), concerns of manufactured evidence were minimized by the victim's admission that previous statements, contrary to those made at trial, were in fact made. *United States* v. *Renville, supra.* We conclude that the trial court did not err in refusing to grant appellant's motion for a directed verdict.

Appellant also contends that the state failed to prove the date of the offense as having occurred within the statute of

limitations as required by § 5-1-111(d), which in this case was within six years of the filing of the information on May 6, 1985. The record refutes the contention. Appellant was arrested on April 27, 1985, and his confession was taken on that date by Officer Beck. Beck testified that he asked appellant if he had oral sex with the boy "on that day" and appellant responded that he had. There was no evidence presented by appellant to indicate the offense was committed prior to six years of filing the information, nor does appellant even argue that was the case. The officer's unequivocal and undisputed testimony on this point eliminates any further argument.

As his second point for reversal, appellant argues that the trial court erred in not allowing him to voir dire the jurors on two points: 1) if there were no physical or documentary evidence, would the jury disregard the prosecutor's references to same; and 2) what was the jury's feeling regarding hearsay evidence versus direct evidence. Both matters included questions of law which were not proper ones for the jury. Beyond that, the extent and scope of voir dire examination is largely a matter of judicial discretion and boundaries of that discretion are rather wide. The restriction of voir dire examination will not be reversed on appeal unless that discretion is clearly abused. *Finch* v. *State*, 262 Ark. 313, 556 S.W.2d 434 (1977). We could not say that there was any clear abuse of that discretion.

Appellant next contends the trial court erred by commenting on the assertion of the doctor-patient privilege in the presence of the jury. In an attempt to keep Dr. Kemp from testifying, the victim and his mother informed Dr. Kemp and the trial court that they were not waiving the doctor-patient privilege. At a pretrial conference the court found the boy's communications to the doctor were not intended to be confidential and were therefore not privileged under A.R.E. Rule 503. *See Baker* v. *State*, 276 Ark. 193, 637 S.W.2d 522 (1982). When the trial commenced, and the doctor began his testimony, there was an objection and then a bench discussion concerning a continuing objection to the privilege. When the discussion concluded the court stated: "Let the record indicate also that an objection has been made under the doctor-patient privilege and the Court has denied that motion and you are ordered and directed to testify, Doctor." Appellant promptly objected on the basis of A.R.E. Rule 512, which limits

comments on claims of privilege. Appellant moved for a mistrial which was denied. On appeal appellant argues the comment was error and the mistrial should have been granted.

A.R.E. Rule 503 recognizes a privilege between patient and doctor which may be claimed by the patient, his guardian or conservator or the personal representative of a deceased patient. A.R.E. Rule 512 applies to all privileges and restricts comment on the claim of privilege:

> RULE 512. Comment upon or inference from claim of privilege-instruction.
>
> (a) Comment of Inference Not Permitted. The claim of a privilege whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.
>
> (b) Claiming Privilege Without Knowledge of Jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.
>
> (c) Jury Instruction. Upon request, any party against whom the jury might draw an adverse inference from claim or privilege is entitled to an instruction that no inference may be drawn therefrom.

Appellant urges that a comment on the privilege is comparable to a comment on a defendant's failure to testify and that the appellant had a right not to have an unfavorable inference drawn from any comment from the court. The state's response is that appellant has no standing to complain because the privilege of Rule 503 does not extend to him. While this is true, it does not appear that the "Comment" Rule, 512, is similarly limited. The person invoking the privilege may not be a party, but an inference could nevertheless be drawn that is unfavorable to a party. See 2 Louissel and Mueller, *Federal Evidence*, (1985) § 249. Furthermore, the language in Rule 512 suggests it would include one who was not involved with the privilege directly, but who could be prejudiced by the mention of it. Rule 512(c) states that "Upon request, *any* party against whom the jury might draw an adverse inference . . ." is entitled to relief from that inference. However, even if appellant can invoke the rule, it is of little help.

■ The prejudice the rule seeks to avoid would appear to have dissipated when the claim to the privilege has not been sustained, as was the case here, and the jury can actually hear and evaluate the testimony to which the privilege claim was directed. See generally, *id.* § 249. Any prejudice from a remark pertaining only to an unsuccessful attempt to claim the privilege is minimal at best.

■ Furthermore, the rule does not provide for an absolute prohibition against mention of a claim of privilege. While 512(a) states the standard that a claim of privilege is "not a proper subject of comment," it recognizes in the next section that it will at times be mentioned: ". . . proceedings shall be conducted, *to the extent practicable*, so as to facilitate the making of claims of privilege without the knowledge of the jury." [Our emphasis.] The rule also recognizes the extent of damage by such mention in Rule 512(c), by authorizing a party to request a cautionary instruction when an adverse inference might be drawn.

Even if we were persuaded that error had occurred in this instance, the rule itself provides the appropriate sanction, a cautionary instruction to the jury. No such instruction was requested, and we think the trial court's denial of a mistrial was not an abuse of discretion. *Birchett* v. *State*, 294 Ark. 176, 741 S.W.2d 267 (1987).

■ As his final point, appellant contends the trial court made an unwarranted rebuke of defense counsel in the presence of the jury. Prior to resting, the state offered a certified copy of the victim's birth certificate into evidence and the court stated it could be received. There seems to have been a pause, after which the defense announced its objection to the introduction of the exhibit. The court then stated: "It took you a long time to make up your mind, overruled." Counsel approached the bench and objected to the court's addressing counsel "in that way" in the presence of the jury, and requested a mistrial. The court responded:

> When something is proffered I pause and hesitate a respectful period of time to give you an opportunity to look at it and make any objection. And if there is none, then I assume that there is no objection and I rule its admissibil-

ity. A certified copy of a birth certificate is, under the laws and statutes, admissible in evidence. So I will overrule your objection and your motion for a mistrial will be denied.

In *McDaniel* v. *State*, 283 Ark. 352, 676 S.W.2d 732 (1984), we attempted to distinguish between the kinds of remarks that could result in reversal, that is, those that are suggestive of a deliberate intent to ridicule or demean counsel, and those which seemingly emanate merely from impatience or annoyance. This remark, we believe, belongs to the latter category. If counsel felt aggrieved by the remark, he could have asked for an admonition to the jury. There was no such request. The only motion was one for a mistrial, which under the guidelines set out in *McDaniel*, was clearly not warranted.

The judgment is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. This is a sad story indeed. It all started when a little boy was going fishing with his mother's boyfriend (the child's present stepfather) but learned at the last minute that someone else was to take his place. The child became upset and unruly, and took his spite out on his little sister. His mother, on discovering what he had done, imposed punishment by way of a spanking. After the boy had been put in a corner, he was still unhappy about the fishing trip and at that time told his mother that her boyfriend, the appellant, had sexually molested him. The mother immediately took her child to a doctor, who decided to send him on to a hospital where he received a more complete examination and evaluation.

After the initial examination at the doctor's office, both the mother and her boyfriend returned home at about the same time. The mother, for fear of arousing the ire of the appellant, told him that the boy had to be taken to the hospital because he had not been to the bathroom in three days. The appellant, who had returned home for some item that he had forgotten, dismissed his fishing partner and insisted on carrying the boy and his mother to the hospital.

Neither the mother nor the child told the appellant the real reason for their trip to the hospital. After the child indicated he did not want to go through with the examination, the appellant,

who at that point did not know that he had been accused, insisted on the child being examined. On two occasions before reaching the examination room, the appellant had to employ stern language to get the boy to go through with the examination.

The boy, apparently with reluctance, told the hospital personnel that the appellant had molested him. Two officers then went to the waiting room and arrested the appellant. This was his firs knowledge, according to his testimony at trial, of what was happening. The father was taken away to jail, and the boy and his mother went home. Shortly thereafter the child recanted his story.

Before recanting the story, the child told a deputy sheriff, a social worker, and the examining doctor that he had been molested. The doctor found no evidence of physical or sexual abuse. At the trial the child denied that he had ever been molested by the appellant. The evidence at trial consisted solely of hearsay testimony. Generally speaking, their testimony was simply that the child had told them that the appellant had molested him. The boy freely admitted at trial that he had told the doctor and others that he had been molested, but insisted that he was mad about the fishing trip and that he made up the story.

Neither the initial examination nor the examination at the hospital revealed any evidence whatsoever of physical or sexual abuse of the child. The only evidence of abuse presented at trial was the recanted story the child had given on the date he was knocked out of the fishing trip.

The only other evidence of abuse presented at the trial was the testimony of the deputy sheriff that the appellant had admitted the act soon after he had been taken into custody. The appellant testified that he never admitted that he had sexually abused the child.

At the trial, the alleged victim testified that he was twelve years of age and was making A's and B's in the seventh grade; he stated that he was vice-president of the student council, a member of the science club, starting tackle on the football team, and a church member. He very clearly explained his understanding of the oath to tell the truth and swore that the appellant had never molested him.

The result in this case is yet another product of the hysteria of crime paranoia that has gripped this nation for some time. I cannot understand why this child's original story should be believed when he made the accusations while he was upset with the appellant, and then recanted the story soon thereafter. Furthermore, this young man is a devoted member of his church and obviously comprehends the responsibilities of taking an oath. He testified under oath that he had lied on the earlier occasion and that the appellant had never molested him sexually. The only reason I can think of for the jury not believing him while he was under oath and believing him when he was not is the attitude among many citizens that a defendant in a criminal trial is guilty or he would never have been charged.

An additional error by the trial court concerns the voir dire of the jury by defense counsel. It is my opinion that the voir dire was unjustifiably restricted. Counsel proposed to ask the jury the following question: "If there was not any physical or documentary evidence, would the jury disregard the prosecutor's reference to same?" Counsel also attempted to inquire of the jury panel members concerning their attitudes on hearsay evidence as opposed to direct evidence. The court refused to allow this inquiry also. The whole purpose of voir dire is to discover if there is any basis for a challenge for cause and to intelligently exercise peremptory challenges. *Sanders* v. *State*, 278 Ark. 420, 646 S.W.2d 14 (1983). Although the scope of voir dire examination is generally vested within the sound discretion of the trial court, and we will not reverse in the absence of abuse of this discretion, the trial court nevertheless should not unduly restrict the extent of voir dire. *Fauna* v. *State*, 265 Ark. 934, 582 S.W.2d 18 (1979); and *Finch* v. *State*, 262 Ark. 313, 556 S.W.2d 434 (1977). I believe these questions were within the legitimate scope of voir dire and should have been permitted.

It was prejudicial error to allow the doctor to testify in view of the fact that the boy and his mother had both given the doctor a written statement that they were not waiving the doctor-patient privilege. Their refusal to waive the privilege was reserved for objection throughout the trial. The doctor was called as a witness and testified about what the boy and his mother had told him. The objection by defense counsel was overruled, and the court stated in the presence of the jury: "Let the record indicate also that an

objection has been made under the doctor-patient privilege and the court has denied that motion and you are ordered and directed to testify, doctor." It is my belief that this was an improper comment by the judge on the privilege which had been asserted. Arkansas Rules of Evidence, Rule 512, states:

COMMENT UPON OR INFERENCE FROM CLAIM OF PRIVILEGE — INSTRUCTION.

(a) Comment or Inference Not Permitted.

The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.

(b) Claiming Privilege Without Knowledge Of Jury.

In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

Even if Arkansas Rules of Evidence Rule 803(25)(A) were valid, it is not a license to prosecute any adult upon nothing more than the hearsay statement of a minor that an adult has abused him or her. Nevertheless, under the precedent of today's decision, a person can be convicted upon the hearsay statement of a child in spite of the fact that the child testified under oath that the statement was never made.

I am of the opinion that what is called A.R.E. Rule 803(25)(A) is unconstitutional for the reasons stated in *Cogburn v. State*, 292 Ark. 564, 732 S.W.2d 807 (1987); *Hughes v. State*, 292 Ark. 619, 732 S.W.2d 829 (1987); and *Johnson v. State*, 292 Ark. 632, 732 S.W.2d 817 (1987). Although one would not know it from a reading of the majority opinion, this court has never expressly ruled that A.R.E. Rule 803(25) is constitutional. Had we in some previous opinion made so significant a holding — one bearing such weight with respect to the vital question of the separation of powers — surely the majority opinion would have quoted the historic language. Because, however, no such explicit approval of the General Assembly's enactment of A.R.E. Rule 803(25) may be found in *Cogburn, Hughes, Johnson*, or any other decision of this court, you will search the majority opinion in

vain for the magic phrase.

Of course, the reason why this court has not held A.R.E. Rule 803(25) constitutional is because it realizes that this enactment, which was not included in the adoption of the Arkansas Rules of Evidence in *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986), violates the Sixth Amendment to the United States Constitution. Justice Dudley, concurring in *Johnson* I, stated that, after our ruling in *Ricarte*, "[t]he Legislature later enacted Rule 803(25), but this Court has not adopted such a rule, and probably will not do so." 292 Ark. at 652, 732 S.W.2d at 828. Yet the majority speaks of the "adoption of A.R.E. Rule 803(25)" and refers to the court as having "upheld the rule" in *Johnson* I, thus appearing to concede to the General Assembly by default what Justice Dudley in his "caveat" termed the "separation of powers issue."

We have never squarely addressed this important question. But in any event, the state cannot impose rules on this court. Why should we allow the trial courts to operate pursuant to a nonexistent rule, whether constitutional or not?

The errors in the trial court were sufficient to require a reversal.