Lawrence SMITH *v.* STATE of Arkansas

CA CR 89-323                                    800 S.W.2d 440

Court of Appeals of Arkansas
En Banc
Opinion delivered December 26, 1990

*Mike Everett*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case is a black person. He was charged with delivery of a controlled substance, found guilty by an all-white jury, fined $5,000.00, and sentenced to fifteen years in the Arkansas Depart-

ment of Correction. From that decision, comes this appeal.

For reversal, the appellant contends that the trial court erred in restricting his voir dire examination of prospective jurors concerning racial bias. We reverse.

A trial judge has wide discretion to regulate the scope and extent of voir dire, and his restriction of voir dire examination will not be reversed on appeal unless his discretion is clearly abused. *Jones* v. *City of Newport*, 29 Ark. App. 42, 780 S.W.2d 338 (1989). The appellant's counsel in the case at bar wanted to ask the jurors: 1) if they thought white persons could identify black persons as well as they could identify other white persons; 2) how they would feel if they were on trial by a courtroom full of black people; and 3) whether they could give equal weight to the testimony of a black witness or a white witness if they testified differently. These questions were not permitted by the trial judge. Instead, the trial judge questioned the jurors concerning racial bias; he asked the jurors whether the appellant's race would influence their verdict, and received a negative response.

We find no significant distinction between the facts of this case and those presented in *Cochran* v. *State*, 256 Ark. 99, 505 S.W.2d 520 (1974). The trial judge in *Cochran* asked the jurors whether their verdict would be influenced by the fact that the defendants were black, and refused to allow the defendant's counsel to question the prospective jurors regarding racial prejudice. Noting that in many instances an attorney decides "whether to use a peremptory challenge not so much on what a venireman may say, but on how he says it," *id* at 100A, the Arkansas Supreme Court held that the question asked by the trial judge was not sufficient "to focus the attention of the prospective jurors to any racial prejudice they might entertain." *Id*.

We do not hold that the appellant had a right to ask all three of the questions which were disallowed by the trial judge. We only hold that the questioning regarding racial bias was insufficient to focus the attention of the prospective jurors to any racial prejudice they might entertain, *cf. Rogers* v. *State*, 257 Ark. 144, 515 S.W.2d 79 (1974), and that the trial court therefore abused its discretion in restricting voir dire with reference to possible racial bias.

Reversed and remanded.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I do not agree that this case should be reversed. The first question which the majority opinion states defense counsel wanted to ask the prospective jurors was asked. No objection was made to the question, and the record indicates some kind of response by some of the prospective jurors. Counsel then moved to two different versions of that question which he asked without objection. It was when he asked a fourth version that the prosecuting attorney objected. The court sustained the objection but counsel then asked the same question again and got one verbal answer to it.

The next question asked by defense counsel was: "How many of you think that you couldn't judge a man on a drug case as well as you could on another case?" No objection was made to this question, and the record shows that counsel asked a number of questions on this and related subjects and that six jurors indicated some kind of response to these questions. It was only when counsel asked how many of the prospective jurors saw the "NBC News last night" about "people who have served on juries that convicted a man that later changed their mind and they said that they had made—" that the prosecutor objected again. That objection was sustained.

Defense counsel then asked the prospective jurors three more questions without objection. One question was, "How many of you feel like you are the type of person who could be intimidated by other jurors?" The second question was, "Do you think people who are older will make you be more prone to change your mind?" This question was apparently directed to the prospective juror who appeared to be the youngest of the entire group. The third question, apparently to the same juror was, "Do you think you could stay with a not guilty vote for twelve hours in that jury room?" The prospective juror to whom the last two questions were directed answered both questions.

The next question asked by the defense counsel in this case was the same question as the very first one asked. It is the first question which the majority opinion states counsel wanted to ask. Although a new group of prospective jurors were now being

questioned, they had been sitting in the courtroom and the judge asked if they had heard the questions asked of the other prospective jurors. The record does not show the response to this inquiry. However, the trial judge was there and could know how they reacted. In *Johnson* v. *State*, 298 Ark. 617, 770 S.W.2d 128 (1989), the court said:

> [T]he extent and scope of voir dire examination is largely a matter of judicial discretion and boundaries of that discretion are rather wide. The restriction of voir dire examination will not be reversed on appeal unless that discretion is clearly abused.

298 Ark. at 623. *See also Jones* v. *City of Newport*, 29 Ark. App. 42, 780 S.W.2d 338 (1989), where we said the trial court did not abuse its discretion in limiting voir dire by requiring the appellant to address his questions to the panel as a whole. 29 Ark. App. at 48.

So, in the instant case when counsel submitted the same question again that he had previously asked without objection, he may have been talking to people whose reaction to the earlier questions he had already observed. In oral argument of this case, defense counsel told this court that the reaction of the prospective jurors was the real thing he was interested in. Their verbal answers, he said, were not very important. At any event, at this point the trial court sua sponte asked to see counsel at the bench and inquired of defense counsel the purpose of the question just asked. After a discussion in which I do not believe defense counsel explained the real purpose of his question to the trial judge as he did in oral argument in this court, and after the prosecuting attorney objected to the question being asked, the court sustained the objection. The judge then patiently and carefully asked the prospective jurors questions about their ability to decide the case on the law and the evidence without being affected by race consideration and very ably explained the importance of jurors who will "like the goddess of justice blindfolded" consider only the facts and law in reaching their decision in the case. After being satisfied that the panel would properly perform their duty if selected to serve on the jury, the court declared a recess for lunch.

After the recess, defense counsel asked the second and third questions set out in the majority opinion. Although he got several

responses to these questions and asked several more subquestions when the responses were made, the court finally sustained an objection to both questions and they were not further pursued.

My disagreement with the majority opinion is one of degree. That opinion recognizes that voir dire examination is largely subject to the trial judge's discretion. In the instant case, I do not find an abuse of the judge's discretion, certainly not a clear abuse as required by *Johnson* v. *State*, *supra*, for reversal. I think the record shows that the trial judge allowed counsel great latitude in the examination of the prospective jurors. All lawyers and judges with courtroom experience know the importance of voir dire examination, but when the main purpose is to watch the prospective jurors' reaction—and not to get the verbal answer—we get into a very delicate question of balance. I submit that the discretion of the trial judge who is present in the courtroom should be even greater in this situation.

I would affirm the trial judge in this case.