Steven Dean ARMER *v.* STATE of Arkansas

CACR 94-1177                                    912 S.W.2d 436

Court of Appeals of Arkansas
En Banc
Opinion delivered December 20, 1995

174

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Steven Dean Armer was convicted by a jury of possession of Valium with intent to deliver and possession of drug paraphernalia. He waived jury sentencing, and the trial judge sentenced him to four years in the Arkansas Department of Correction for each conviction, with the sentences to run concurrently. Mr. Armer now appeals, arguing that the trial court improperly limited his voir dire of the potential jurors. We affirm.

The evidence in this case showed that, on July 17, 1993, a police officer found Mr. Armer passed out in the back seat of his vehicle. In plain view inside the car were approximately 1000 Valium tablets and various items of drug paraphernalia. Upon discovering this contraband, the police took Mr. Armer into custody.

On the day of Mr. Armer's trial, his counsel attempted during voir dire to question potential jurors about punishment and sentencing. The trial court stated that the only questioning that would be allowed regarding sentencing would be whether any member of the jury panel would be uncomfortable sending Mr. Armer to prison for the maximum term of ten years if found guilty. Mr. Armer's counsel requested, but was not permitted, to ask the following questions to the prospective jurors:

> 1. Would the jury members automatically give the maximum sentence to each offense charged just because it was a drug case and whether their attitude was to lock up and throw away the key, put these people away for a long period of time?
>
> 2. Is prison the only alternative? Would the jury members consider a fine? Is a fine appropriate in a drug offense case?
>
> 3. Do the jury members think that drug addicts should be treated differently than people who are drug dealers?
>
> 4. Do the jury members know the difference between misdemeanors and felonies?
>
> 5. Do the jury members believe in individualized penalties based upon the facts and circumstances of each particular case?
>
> 6. Do the jury members think that first offenders should be treated differently than multiple offenders?

For reversal, Mr. Armer contends that the trial court erroneously prevented him from asking the above questions. He argues that, had he been allowed to make his proposed inquiries regarding sentencing and punishment, he would have had an opportunity to strike jurors who may have been inclined to give him the maximum sentence. Since he was unable to ask these questions, Mr. Armer asserts that he had no practical choice but to waive jury sentencing.

■■ The purposes of voir dire examination are to discover if there is any basis for challenging for cause and to gain knowledge for the intelligent exercise of peremptory challenges.

Ark. R. Crim. P. 32.2(a); *Nutt* v. *State*, 312 Ark. 247, 848 S.W.2d 427 (1983). The extent and scope of voir dire examination of prospective jurors are matters lying within the sound judicial discretion of the trial court, the latitude of which is rather broad. *Parker* v. *State*, 265 Ark. 315, 578 S.W.2d 206 (1979). A trial court's limitation of voir dire examination is not reversible on appeal unless it constitutes a clear abuse of discretion. *Fauna* v. *State*, 265 Ark. 934, 582 S.W.2d 18 (1979).

In the case at bar, we need not address the merits of Mr. Armer's argument because any possible prejudice against Mr. Armer was removed when he waived jury sentencing and was sentenced by the trial court. In *Clinkscale* v. *State*, 13 Ark. App. 149, 680 S.W.2d 728 (1984), this court affirmed the appellant's conviction despite his complaint that two jurors declared that they could not sentence him impartially. In doing so, we held that although the appellant was faced with a biased jury, any prejudice was cured because the jury unanimously elected to let the trial court set the sentence, and the trial court did so. A somewhat analagous situation was addressed by the supreme court in *Smith* v. *State*, 300 Ark. 330, 778 S.W.2d 947 (1989), and is also instructive. In that case, the appellant took issue with the trial court's refusal to grant his motion in limine to exclude his prior felonies on cross-examination by the State. The appellant chose not to testify on his own behalf as a result of the ruling, but the supreme court held that his assignment of error was not preserved for review because he did not testify at trial. The court stated:

> To perform the weighing of the prior conviction's probative value against its prejudicial effect, as required by Rule 609(a)(1), the reviewing court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify. Any possible harm flowing from a trial court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative. Moreover, when the defendant does not testify, the reviewing court has no way of knowing whether the State would have sought so to impeach, and cannot assume that the trial court's adverse ruling motivated the defendant's decision not to testify. Even if these difficulties could be surmounted, the reviewing court would still face the ques-

tion of harmless error. If *in limine* rulings under Rule 609(a) were reviewable, almost any error would result in automatic reversal, since the reviewing court could not logically term "harmless" an error that presumptively kept the defendant from testifying. Requiring a defendant to testify in order to preserve Rule 609(a) claims enables the reviewing court to determine the impact any erroneous impeachment may have in light of the record as a whole, and tends to discourage making motions to exclude impeachment evidence solely to "plant" reversible error in the event of conviction.

■ In the instant case no reversible error occurred because, although Mr. Armer was unable to question potential jurors regarding sentencing, he was not sentenced by the jury. As in *Clinkscale* v. *State* and *Smith* v. *State*, it would be pure speculation for us to attempt to weigh any possible harm suffered by Mr. Armer as a result of the alleged error. It is entirely possible that, even if Mr. Armer had been allowed to voir dire the jurors and then decided to submit the case to the jury for sentencing, the jury would have exacted the same or greater punishment than that given by the trial court. It is also wholly conceivable that, had Mr. Armer not waived jury sentencing, the jury may have given a lighter sentence than the trial court despite the excluded voir dire questioning. Moreover, when Mr. Armer waived jury sentencing, he failed to indicate that he was doing so as a result of the excluded voir dire. Mr. Armer has not shown prejudice, therefore we affirm his convictions.

Affirmed.

PITTMAN, J., concurs.

JENNINGS, C.J., COOPER and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. The point raised in this appeal is actually a new point even though on the surface it may not appear to be new. The question presented is linked to Ark. Code Ann. § 16-97-101 (Supp. 1993) which provides for a bifurcated trial procedure in jury trials on felony charges. In summary, as pertains to this appeal, this statute provides that after the jury has found a defendant guilty, it shall then hear additional evidence, if any, relevant to sentencing, and then retire and

determine the sentence; however, with the agreement of the prosecution and consent of the court the defendant may waive jury sentencing and let the court impose sentence.

This procedure was enacted into law by Acts 551 and 535 of 1993, and became effective on January 1, 1994, and shall expire on June 30, 1997. The appellant in this case was tried, found guilty, and sentenced in May of 1994, so this procedure applied in this case. *See Williams* v. *State*, 318 Ark. 846, 887 S.W.2d 530 (1994). He was found guilty of possession of a controlled substance with intent to deliver and possession of drug paraphernalia and was sentenced to four years on each charge, with the sentences to run concurrently. The judgment and commitment order show that these crimes are Class C felonies, and under Ark. Code Ann. § 5-4-401(a)(4) (Repl. 1993) the maximum sentence on each is ten years.

Appellant's sole argument on appeal is that his voir dire of the jury was improperly limited by the trial judge. His brief shows (and the State concedes) that during voir dire the appellant's attorney stated to the court that he wanted to ask the prospective jurors some questions about sentencing, and the trial judge said that counsel could only inquire whether any member of the panel would be uncomfortable with sending the defendant to the penitentiary for the maximum of ten years if they found him guilty. The judge clearly said, "that's all I am going to permit on the issue of punishment." Defense counsel then told the judge that he "would ask further questions," but would proffer them later "if you don't want me to do it right now — " and the judge cut him off by again stating, "That's all I'm going to permit on this voir dire."

Later, after all the evidence had been presented in the guilt phase of this bifurcated trial, appellant's counsel moved for a directed verdict on both charges. The judge overruled the motion, and counsel then proffered for the record the questions he wanted to ask the jury on voir dire. Generally, the questions would have asked the prospective jurors if they would automatically give the maximum sentence just because the charge was a drug offense; whether their attitude was to lock up and throw the key away; would they consider a fine or did they think prison was the only alternative; did they believe in individualized penalties based upon the facts and circumstances in each particular case; and

whether they thought first offenders should be treated differently than multiple offenders.

The court then instructed the jury, and after deliberation, the jury returned a verdict of guilty on each charge. The court then advised the appellant that he had the right to proceed to the second phase of trial with jury sentencing or waive jury sentencing. Counsel stated that they would waive jury sentencing and leave that matter to the court, and upon the appellant's confirmation of that decision, the judge sentenced appellant to four years on each count, to run concurrently.

Appellant cites the case of *Smith* v. *State*, 33 Ark. App. 52, 800 S.W.2d 440 (1990), where this court, sitting en banc, reversed and remanded because the trial court abused its discretion in refusing to allow appellant to ask on voir dire whether the prospective jurors thought they could identify black persons as well as they could identify white persons; how they would feel if they were on trial by a courtroom full of black people; and whether they could give equal weight to the testimony of a black witness who testified differently than a white witness. Our opinion there noted the case of *Cochran* v. *State*, 256 Ark. 99, 505 S.W.2d 520 (1974), and its statement that in many instances an attorney decides "whether to use a peremptory challenge not so much on what a venireman may say, but on how he says it." And we reversed in the *Smith* case saying, "we do not hold that the appellant had a right to ask all three questions which were disallowed by the trial judge" but "only hold that the questioning regarding racial bias was insufficient to focus the attention of prospective jurors to any racial prejudice they might entertain."

In the instant case, the appellant also cites us to the case of *Tobar* v. *State*, 874 S.W.2d 87 (Tex. App. 1994), where the court held it was error to refuse the appellant the right to ask the jury panel on voir dire, "What is your particular theory of punishment and what should be its purpose?" We are also cited to *Morgan* v. *Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed. 2d 492 (1992) where the Court reversed because the trial judge would not allow the voir dire question of whether the jury would vote for the death penalty regardless of the facts. And we are cited to *People* v. *Oliver*, 637 N.E.2d 1173 (Ill. App. 1994), where the court said in reversing a conviction:

> [P]rejudice and bias are deep running streams more often than not concealed by the calm surface stemming from an awareness of societal distaste for their existence. Extended and trial-delaying interrogation may not pierce the veil, yet a few specific associational questions as a maieutic process may indicate the dormant seeds of prejudice, preconceived and unalterable concepts or other nonfairness disqualifications. The result may not reach the stage of being a basis for cause challenge but could well, because of an abundance of counsel caution, bring about a peremptory challenge which an omniscient eye would have known should have been exercised.

In the instant case, the State simply argues that the appellant suffered no prejudice by the trial court's ruling because the "appellant waived sentencing by the jury and requested that the trial court impose a sentence." The majority opinion agrees with the State and says, "we need not address the merits of Mr. Armer's argument because any possible prejudice against Mr. Armer was removed when he waived jury sentencing and was sentenced by the trial court." The appellant says that he waived jury sentencing because "he was faced with the prospect of having jurors who were inclined to sentence him to the maximum sentence, even though he was a drug user with no prior drug convictions." Thus, he argues, he was "presented with a catch-22 situation." He also points out that he exercised only one of the eight peremptory jury strikes and, therefore, could have excused other jurors if their answers appeared adverse to appellant's best interest in regard to sentencing.

I agree with appellant's argument. The clear implication of the majority opinion is that the only way the appellant could preserve error for our review would be to let the jury determine the sentence. I do not believe the appellant should be relegated to such a draconian choice in order to preserve the point for an appeal to which he has as "a matter of right." *See Schalchin* v. *State,* 317 Ark. 644, 885 S.W.2d 1 (1994). Also, the position taken by the majority clearly demonstrates its failure to appreciate what is involved here. In all criminal prosecutions the accused has the right to trial by an "impartial jury" under the Constitution of the United States and the Constitution of the State of Arkansas. *See* U.S. Const. amend. VI; Ark. Const. art. 2, § 10.

*See also Schalchin* v. *State, supra.* Not only that — but the very statute which provides for the bifurcated trial procedure employed in this case, Ark. Code Ann. § 16-19-101(5) (Supp. 1993), provides:

> (5) After a jury finds guilt, the defendant, with the agreement of the prosecution and the consent of the court, may waive jury sentencing, in which case the court shall impose sentence.

Thus, the appellant here had the right under the above statute to have his sentence fixed by the jury. The majority opinion agrees that "the purposes of voir dire examination are to discover if there is any basis for challenging for cause and to gain knowledge for the intelligent exercise of peremptory challenges." But the majority opinion is wrong in suggesting that the situation here is analogous to that in *Smith* v. *State*, 300 Ark. 330, 778 S.W.2d 947 (1989), where the court said it was adopting prospectively a rule to require that for a defendant to raise and preserve for review a claim of improper impeachment with prior conviction, the defendant must actually testify. The court said in *Smith* that this rule will keep the defendant from obtaining a ruling on a motion *in limine* on the basis that if the impeachment evidence of a prior conviction is allowed the defendant will not testify but then deciding whether to testify based upon the ruling on his previous motion. The court said its newly adopted rule would avoid "gamesmanship between the State and the defendant."

However, under the existing law unless — *before* voir dire of the jury panel — each side makes an irrevocable election to waive jury sentencing each side must exercise its right to voir dire the jury panel before the trial begins. This is, of course, obvious because Ark. Code Ann. § 16-19-101(5) provides that it is only "with the agreement of the prosecution and the consent of the court" that the defendant may waive jury sentencing. Therefore, unless it is known before the jury is selected *that it will not* fix the sentence, either side cannot truly exercise its right to voir dire the jury in regard to matters that are proper to be known in regard to sentencing by the jury.

Here, it is clear that the trial judge would let the appellant's attorney make only one inquiry of the jury panel before the jury was selected. The judge said the attorney could ask "whether any

member of the jury panel would be uncomfortable sending this person to the penitentiary if found guilty for the maximum amount of ten years." I do not think, and the majority opinion does not reach that point, that this one question is sufficient for a party to properly exercise its right of voir dire. This is not to say that each question proffered by the appellant should be allowed. The majority opinion sets them out and surely number 5, "Do the jury members believe in individualized penalties based upon the facts and circumstances of each case" is a proper question to ask on voir dire.

As to the State's argument that "the appellant suffered no prejudice because the trial court did not impose the maximum sentences on appellant," I would simply reply that four years in prison seems rather prejudicial to me. We should remember that the question is not whether the judge was prejudiced against the appellant but whether the appellant's right to have his sentence fixed by the jury was prejudiced by the judge's error in not letting the defendant properly voir dire the jury. I say it was, and we should reverse.

Under the statutory law in effect at the time this case was tried, I think the trial court erred in refusing to let the appellant ask, at least, question number 5 before the jury was selected.

I would reverse and remand.

JENNINGS, CJ., and COOPER, J., join this dissent.