Clarence WALTON *v.* STATE of Arkansas

CR 82-136                                    650 S.W.2d 231

Supreme Court of Arkansas
Opinion delivered May 9, 1983

*Jesse E. "Rusty" Porter, Jr.* of *Porter & King*, for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Clarence Walton was charged with the rape and attempted capital murder of a mother of four who clerked in a twenty-four hour convenience store called the Jr. Food Mart in Marianna, Arkansas. He was convicted on both counts and sentenced to life imprisonment for the attempted murder, and fifty years and a $15,000 fine for the rape, the sentences to be served consecutively.

On appeal he argues that seven errors were committed. We find one of them meritorious. Sarah J. Hood, who ultimately served as foreman of the jury, was challenged for cause and the court should have sustained the challenge. Not doing so was prejudicial error which requires us to reverse the judgment and remand the cause for a new trial.

On May 29, 1981, at about 3:30 A.M., the victim, while working at the store, was violently assaulted and raped.

Walton, eighteen, was charged with the offense. He is black and the victim is a white woman.

His first trial resulted in a mistrial because the jury was unable to reach a verdict. The jury impaneled for a second trial was ordered quashed by the trial court when it was challenged by Walton's attorneys. That jury was selected by jury commissioners rather than by random selection using a jury wheel in accordance with Ark. Stat. Ann. § 39-205.1 (Supp. 1981). A total of forty-four jurors were examined, seventeen were excused by the court for various reasons, and the jury was selected only after individual voir dire examination in the judge's chambers. The trial judge was careful in the formation of the jury which heard Walton's case. But, even so, we are satisfied that the trial court abused its discretion in allowing Mrs. Hood to sit on this jury because the record reflects that Mrs. Hood was simply not candid with the court. There is no question that a proper motion to strike her for cause was made; all the appellant's peremptory challenges had been exhausted.

Mrs. Hood is a teacher at a private school in Lee County. She brought her government class to the second day of Walton's first trial and evidently was present during most of the day. We cannot be certain from the record exactly what she heard in the way of testimony, because she was somewhat vague about it and denied any knowledge of what actually transpired. She did say that she and her class had discussed the case, but explained that the discussion was mostly about the procedural aspects of the trial. Mrs. Hood had been a teacher of the deputy prosecuting attorney. She said she wanted to serve on the jury because she never had been a juror. No doubt this desire affected her answers to questions about her qualifications.

Mrs. Hood's initial examination by the court reads:

BY THE COURT:

Q. Good morning, Mrs. Hood.

A. Good morning.

Q. Mrs. Hood, this is the case of the State of Arkansas against Clarence Walton. He is charged with rape and attempted capital murder. This is a criminal trial. The charge alleges that on or about May the 29th of last year that he committed these two offenses. The victim was _____ *Mrs. Hood, do you know anything about this case?*

A. *I have no personal knowledge of the case, no, sir.*

Q. Have you read anything about it in the local newspaper?

A. Yes, sir.

Q. From what you have read about it in the newspaper, have you formed any opinion about this case one way or the other?

A. No, sir, I have not.

Q. *Have you heard anybody discuss the case where you work, or in your home, or throughout the community?*

A. *No, sir.*

Q. Have you heard any talk about the case in the community at all?

A. Just casual conversation.

Q. From the casual conversation that you may have heard about this case, have you formed any opinion, Mrs. Hood?

A. No, sir, I have not.

Q. Mrs. Hood, Clarence Walton is sitting at the table here this morning. Do you know Clarence Walton?

A. No, sir.

. . .

Q. As you sit here this morning, Mrs. Hood, *do you have anything that is running through your mind that you think you ought to tell me or the lawyers that might in some fashion affect your ability to be a fair and impartial juror no matter what it is, legal, moral, or anything?*

A. *No, sir.*

(Emphasis added.)

She was next examined at length by the prosecutor and she did not reveal that she had heard one day's testimony in the first trial. She did not disclose this until she was examined by the defense attorney. Then, in response to a direct question, she answered that she had indeed been in the courtroom with her government class at Walton's first trial and had listened to testimony for one full day. She obviously should have volunteered this information to the trial court when initially examined. The judge refused to strike her for cause, but the record reflects that the trial judge did not accurately remember her first answers because he did not think she had been evasive. The defense attorney said:

> Your Honor, I believe, as the court inquired of Mrs. Hood, she indicated that she had not heard any testimony of the case other than possible talk; is that correct, when she first started talking?

The court replied:

> I can't honestly say. That is the forty-second juror we have questioned, and I have asked all of them if they know anything about the case, and she indicated she knew something and could set it aside. What her precise answers were, I do not know.

Clearly, the court did not recall that Mrs. Hood had been deceptive in her answers to the court's questions. In our judgment her answers were not truthful and, in view of that,

she should not have been allowed to sit on this jury. We do not imply that if a prospective juror is aware of testimony in a case he can never be allowed to sit as a juror. *See Holland* v. *State,* 260 Ark. 617, 542 S.W.2d 761 (1976). However, that is not the situation presented here. The case before us involves a prospective juror, who later served as foreman of the jury, who was not candid with the court. She knew a considerable amount about the case, or she certainly could have; she did or could have easily formed some opinions from hearing evidence at the first trial which could have influenced her judgment of the case. When examined closely about what she heard, all her answers were phrased to deny any knowledge that would disqualify her. She expressed a special desire to serve on the jury because she had always wanted to serve on a jury, had been a registered voter for at least twenty-one years, and never been called. She thought it would be quite an experience. Perhaps that desire affected her answers. But it was not until she was specifically asked whether she attended the first trial did she answer candidly. We cannot easily overlook this fact simply because she said she could set aside any conceptions, information or opinions she may have had. While a venireman is generally "impartial" when he states that he can put aside any preconceived opinions and give the accused the benefit of all doubts that the law requires, it is not an automatic cure-all for opinions, relationships or information that could dis-qualify one. *Glover* v. *State,* 248 Ark. 1260, 455 S.W.2d 670 (1970). Art. 2, § 10, ARK. CONST. *See* also Ark. Stat. Ann. §§ 43-1919, 43-1920. In *Glover* v. *State, supra,* we independently reviewed the voir dire examination and found it error to allow four jurors to be seated who said they could set aside opinions they held about the guilt of the defendant.

And in *Swindler* v. *State,* 264 Ark. 107, 569 S.W.2d 120 (1978) and *Beed* v. *State,* 271 Ark. 526, 609 S.W.2d 898 (1980), we found error in the court's decision to allow jurors to serve who in our judgment could have been biased because of certain relationships. In both cases the jurors said they could put aside their personal feelings, or be objective. Some opinions and relationships cannot be overcome by a mere recitation by the prospective jurors that they will set aside objectionable factors. And we have reversed cases where a

juror deliberately withheld information. *Baysinger* v. *State*, 261 Ark. 605, 550 S.W.2d 445 (1977); *Bryant* v. *Brady*, 244 Ark. 807, 427 S.W.2d 179 (1968).

We have said that statutes concerning qualifying a juror must be liberally construed to safeguard the guarantee of an impartial trial. "The polestar should be brighter and more clearly visible in a criminal case than in a civil one," and "justice ought not only to be fair, but appear to be fair." *Beed* v. *State, supra.* In view of Mrs. Hood's answers we can only conclude she should not have been allowed to serve.

Other issues that we must discuss will be dealt with briefly. It is argued three other prospective jurors should have been excused for cause, but we need not examine that claim since they were excused peremptorily.

There was substantial evidence to support the finding that Walton was guilty of rape and attempted capital murder. The victim was brutally assaulted in the store, dragged a considerable distance, and beaten about the head and face; she was raped, and according to her testimony, she was strangled with a belt and survived only because the blood from her wounds made the belt slippery enough for 'her to remove it. She said that she knew the man who raped her, that he had been in the store several times to buy magazines. Walton only lived about 200 yards from the store, and was seen in the store close to the time of the rape by at least one witness. This was about 3:00 A.M.

The trial court's ruling that the victim's in-court identification of the defendant was admissible was not error. The trial court was careful to limit the State's use of the identification evidence so that no prejudicial evidence would be admitted. No mention was to be made by the State of a lineup or identi-kit. (A picture made up of the assailant from her description by the State in its examination of the victim.) Actually the defense brought up both matters in its cross-examination. Immediately after the assault the victim talked to a policeman and generally described her assailant as about six feet tall, black, medium complexioned, with a beard and wearing khaki pants. The policeman said blood

was coming out of her eyes. Her lower lip had been split almost to the chin exposing her teeth and gums. She had been choked and had massive bruises, abrasions and contusions. The day after her assault the victim was unable to identify the appellant as her assailant from a group of photographs. But there was testimony that her condition could have easily affected her judgment. Her eyes were virtually swollen shut and she was under medication. At the first physical lineup, held June 11, 1981, she could not identify the appellant until he turned sideways and at that point she did identify him as her assailant. She was positive. She testified positively that she had seen him because he often bought magazines which she described as "girly" magazines. She did say that she thought her assailant was thirty years old and as it turns out he was not nearly that age. But his photograph demonstrates why she could have been that far off on his age. One could easily be of the opinion that that person was well over eighteen. Her other descriptions of him were generally close to his physical appearance. Victims of violent crimes rarely give descriptions that later square in all respects with the physical characteristics of their assailants and that is understandable. Sometimes identification is unreliable, and for that very reason reliability is considered an important factor, and the trial court must decide if the identification is reliable enough to be considered by a jury. The trial court decided the victim's identification was reliable and we cannot say that he abused his discretion. *Kellensworth* v. *State,* 278 Ark. 261, 644 S.W.2d 933 (1983).

The photographs taken of her immediately after the incident and used as evidence were certainly graphic proof of the vicious beating she suffered. But merely because photographs are inflammatory is not reason enough to exclude them. *Cotton* v. *State,* 276 Ark. 282, 634 S.W.2d 127 (1982). In this case the appellant was charged with attempting to kill the victim and the photographs were evidence of the viciousness of the attack, from which the jury could easily conclude that the assailant tried to kill her. *Hulsey* v. *State,* 261 Ark. 449, 549 S.W.2d 73 (1977).

The trial court denied a motion for change of venue. There were twenty affidavits filed by people who said they

heard talk or knew the appellant could not get a fair trial in Lee County. Some of them were of the opinion that a black man accused of raping a white woman could not get a fair trial in Lee County. The State filed counter-affidavits by several people who said that in their judgment the appellant could get a fair trial. There was no evidence at all there was undue publicity in this case as there was in the case of *Swindler* v. *State, supra.* Nor does the voir dire record reveal that an undue number of jurors had to be stricken because of their knowledge of the case, or feelings about the case, as was the case in *Ruiz* v. *State,* 265 Ark. 875, 582 S.W.2d 915 (1979). We cannot say on the basis of this record that the trial court was wrong in denying the appellant a change of venue. This was an all white jury composed of two men and ten women. There was a general challenge to the panel as not being fairly representative of blacks and men. Both arguments are meritless. The State only used two of its peremptory challenges and, evidently, those were used on blacks. That, however, does not constitute error. *Beed* v. *State, supra.* A black person has no constitutional right to a jury that has one or more black people on it. *Brown* v. *State,* 239 Ark. 909, 395 S.W.2d 344 (1965), *cert. denied* 384 U.S. 1016 (1966); *Conley* v. *State,* 272 Ark. 33, 612 S.W.2d 722 (1981). Merely because no member of a party's race is on a jury is not in itself cause to quash a jury. *Lewis* v. *Pearson,* 262 Ark. 350, 566 S.W.2d 661 (1977). Nor is it prejudicial in a rape case that women compose a substantial part of the jury. *Urquhart* v. *State,* 275 Ark. 486, 631 S.W.2d 304 (1982). The appellant had the burden of showing a systematic exclusion of black people, and failed to meet that burden. *Beed* v. *State, supra.*

Objection was made that the maintenance of the master jury list violated Ark. Stat. Ann. § 39-206 (Supp. 1981). The appellant's argument is somewhat confusing. Evidently after the panel was chosen by random selection, using two numbers to select registered voters, a list of the panel was prepared. Then the list was cut up so that the names were on individual slips of paper; they were placed in a metal, three by five, file box. It was always in the custody of the clerk and locked in a vault at night. Defense counsel compared the slips with the master list and could show no discrepancy. He challenged the correctness of the procedure but where there

is no prejudice shown, we find no error. *Renton* v. *State*, 274 Ark. 87, 622 S.W.2d 171 (1981).

On appeal, for the first time, it is argued that Walton's conviction and sentence for both attempted capital murder and rape subjects him to double jeopardy and violates Ark. Stat. Ann. § 41-105. We agree that the statute does prohibit such sentences. *Rowe* v. *State*, 271 Ark. 20, 627 S.W.2d 16 (1982); *Swaite* v. *State*, 272 Ark. 128, 612 S.W.2d 307 (1981). On retrial the trial court will no doubt see that these decisions are followed in the event the appellant is found guilty of both charges as he was in this case.

Reversed and remanded.

ADKISSON, C.J., dissents.

RICHARD B. ADKISSON, Chief Justice, dissenting. I dissent from this Court's conclusion that Mrs. Hood was untruthful in her answers to questions on *voir dire.*

The correctness of Mrs. Hood's answers is undisputed. Mrs. Hood correctly stated that she had no personal knowledge of the case, that she had not heard anyone discuss the case out in the community, and that she knew of nothing running through her mind that would affect her ability to be a fair and impartial juror.

The majority has no other basis on which to reverse this case other than the fact that Mrs. Hood had heard some bits of the testimony on the first trial of the case. This is not a sufficient reason for disqualification of a juror. *Holland* v. *State*, 260 Ark. 617, 542 S.W.2d 761 (1976).

The trial judge heard the *voir dire* of Mrs. Hood and concluded that she was not evasive in her answers. The record reflects that she answered each question accurately. The trial judge's conclusion that she was not evasive is not only not clearly erroneous but is clearly correct.

I would affirm this case.