Robert Lee WALKER *v.* STATE of Arkansas

CR 93-659                                      864 S.W.2d 230

Supreme Court of Arkansas
Opinion delivered November 1, 1993

*Christopher D. Anderson,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Clint Miller,* Senior Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Robert Lee Walker was convicted of aggravated robbery and misdemeanor theft. He appeals this judgment and his sentence as a habitual offender to 35 years imprisonment for aggravated robbery and one year in jail and a fine of $1,000 for misdemeanor theft. His points on appeal are that his right to a trial by jury was unduly encumbered by the Habitual Offender Act following a severance of charges for trial purposes; that he was denied equal protection of the laws, since a presentence report depicting mitigating circumstances was not made available to the jury; and blacks were not sufficiently represented on the jury panel. All three points are meritless, and we affirm.

On April 6, 1992, Stephanie Thomas, an employee at Schickel's Cleaners was working at the store when the appellant came in and asked for clothing for his wife. Immediately following the request, she testified that Walker threatened to "blow her head off" if she did not give him the money in the cash register. She did not see a gun but the appellant had his hand in his jacket pocket, according to her testimony, as if he had a gun. She gave the appellant a disputed amount of money from the cash register. He next pulled her over to the bathroom, told her to go inside and lock the door, and said if she came out he would shoot her. She later identified the appellant in a lineup at the Little Rock Police Department.

Walker was charged in one felony information with one count of aggravated robbery and one count of misdemeanor theft

associated with the Schickels robbery and one count of aggravated robbery and one count of misdemeanor theft associated with a robbery of E-Z Mart three days later on April 9, 1992. The appellant moved to sever the charges on the basis that they were not part of a single plan or scheme. The motion was granted. Walker was first tried for the April 9, 1992 robbery of E-Z Mart and was convicted and sentenced to five years. The next day, November 18, 1992, he was tried for the Schickels robbery which is the case before us. Prior to the second trial, the State moved to amend the felony information to add a habitual offender count. The trial court granted the motion.

At trial the appellant testified that he robbed Schickel's Cleaners on the date in question but claimed that he did not have a gun in his pocket and that he did not threaten to harm Ms. Thomas. The jury, nevertheless, found him guilty of aggravated robbery and misdemeanor theft.

During the penalty phase of the trial, the jury was instructed that the State had alleged that the appellant was a habitual offender. The State then offered docket sheets reflecting that Walker had been convicted of aggravated robbery on August 25, 1992, and sentenced to 11 years, and aggravated robbery the day before on November 17, 1992, in connection with the E-Z Mart robbery and sentenced to 5 years. As a habitual offender, the jury was instructed that Walker was punishable by a term of not less than 20 years nor more than 60 years. The jury fixed his sentence at 35 years for aggravated robbery and one year in jail and a $1,000 fine for misdemeanor theft, and judgment was entered accordingly.

## I. THE RIGHT TO TRIAL BY JURY

The appellant first contends that his Sixth Amendment right to a jury trial was burdened by his having to choose between seeking a severance and risking application of the Habitual Offender Act on the one hand, and not seeking a severance and increasing his chances of conviction when the jury was presented with evidence of the robbery of two stores on the other. He claims that he was entitled to have the counts severed because the offense on April 6, 1991 (Schickel's Cleaners), and the offense of April 9, 1991 (E-Z Mart), were separate and distinct and only joined because they were similar in nature. He urges that under these

circumstances he should not be subjected to an enhanced penalty due to a conviction on the severed charge.

■ We begin by noting that it is the prosecuting attorney who has the discretion to file a criminal information under Arkansas law, and only the prosecutor has the authority to amend that information. Ark. Const. amend. 21, § 1; *Simpson* v. *State*, 310 Ark. 493, 837 S.W.2d 475 (1992). In this matter, the prosecutor chose to file charges relating to an April 6, 1991 robbery at Schickel's Cleaners in the same felony information with charges for an April 9, 1991 robbery at E-Z Mart. The appellant offers no authority to support his contention that the prosecutor did not have discretion over whether to file one information on the offenses or two informations. Indeed, the law is to the contrary. There is no question that had the prosecutor filed two informations, which was clearly within his authority, the first conviction would have been admissible for enhancement purposes irrespective of the fact that the conduct at issue in the first trial occurred after the conduct at issue in the case at bar. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991).

■ The appellant was properly found to be a habitual offender as he had two prior felony convictions — an August 25, 1992 conviction, and the November 17, 1992 conviction relating to E-Z Mart. There was no error by the trial court in this regard.

## II. PRESENTENCE REPORT

The appellant's second asserted error is that the trial court refused to present information to the jury about the appellant comparable to what the court would have received in a presentence report on a guilty plea. *See* Ark. Code Ann. § 5-4-102 (Supp. 1993). This, according to Walker, violated his equal protection rights.

The record reflects that the trial court did allow Walker to tell the jury that he had harmed no one in his previous crimes. The appellant also asked that the terms of his prior convictions be given to the jury, and this was done during the penalty phase of the trial. What Walker was forbidden to argue to the jury was the range of penalties at issue in the prior convictions. The trial court ruled that this information was irrelevant to the instant case.

■ We do not need to reach the issue of whether the trial

court's ruling was correct. The appellant couches his argument on appeal on an equal protection premise. That argument, however, was not made to the trial court and hence it was not preserved for appeal. This court has repeatedly stated that it will not consider an issue raised for the first time on appeal. *See, e.g., Gaines* v. *State*, 313 Ark. 561, 855 S.W.2d 956 (1993); *Tisdale* v. *State*, 311 Ark. 220, 843 S.W.2d 803 (1992); *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990). We again refuse to do so in this case.

## III. DEFECTIVE JURY PANEL

The appellant finally argues that the trial court was in error in refusing to strike the jury panel on grounds that it contained too few blacks. The appellant contends before this court that he prematurely concluded his efforts to seat another black juror for fear he would influence the other jurors if they realized he was challenging the jury's racial makeup. He claims that there were *about* 4 blacks in the 38-person jury pool, although we have no records before us to verify this information, and defense counsel, admittedly, is unsure of the precise numbers. He concludes that this court should remand this case for a determination of the racial makeup of the jury to prove that the panel represented a cross section of the community.

The law on this matter has been established. The appellant has the burden of proving the systematic exclusion of black jurors from the venire. *Gillie* v. *State, supra*; *Sanders* v. *State*, 300 Ark. 25, 776 S.W.2d 334 (1989); *Walton* v. *State*, 279 Ark. 193, 650 S.W.2d 231 (1983). To make a prima facie showing of systematic exclusion, the appellant has to establish the following: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in the venire is not fair and reasonable in relation to the number of such persons in the community; and (3) the under representation is due to systematic exclusion. Only after the appellant has made his prima facie case by establishing these three elements does the burden shift to the State to justify its procedure. *Sanders* v. *State, supra*.

Here, there is no dispute that blacks represent a distinctive group in the community. However, the appellant did not establish the second and third elements of the *Sanders* test. The appellant is not certain about the racial composition of the

jury pool. Added to that, he offers no statistical proof of the racial composition of the community or of the venire. Furthermore, he completely fails to offer any evidence of systematic exclusion. As a result, the appellant does not make his prima facie case, and, therefore, the burden never shifted to the State to justify its procedure. The trial court correctly denied the appellant's objection to the jury panel.

As a final point, we emphasize once more that we will not remand a case in order for an appellant to garner more information to bolster his posture on appeal. Unlike some of our sister states, in Arkansas we entertain only one appeal from a final judgment or order which completely disposes of all issues involving all parties. Ark. R. App. P. 2(a)(1). It is incumbent upon the appellant to present a case before the trial court which fully and completely develops all issues. This, by the appellant's own admission, was not done. Accordingly, we do not acknowledge the remedy requested by Walker. The trial court correctly refused to quash the jury panel.

Affirmed.