Marcus BOHANAN *v.* STATE of Arkansas

CR 95-1144 919 S.W.2d 198

Supreme Court of Arkansas
Opinion delivered April 15, 1996

160

*William R. Simpson, Jr.*, Public Defender, by: *Sandra S. Cordi*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. Appellant Marcus Bohanan was convicted of capital murder committed in the course of an aggravated robbery, first-degree battery, and aggravated assault. He was sentenced to life imprisonment without parole for the capital murder, twenty years' imprisonment for the battery conviction, and six years' imprisonment for the assault conviction; the sentences are to be served concurrently. On appeal, Bohanan asserts that the trial court committed reversible error by allowing the State to introduce into evidence a bullet seized from his vehicle. We affirm.

On the evening of April 16, 1994, a number of people were gathered at the Little Rock home of Weston Williams. Appellant Marcus Bohanan and Larry Davis came to the house and asked to use the telephone. Davis was known to the residents and the two were admitted. While Bohanan and Davis were present in the home, Charles Wicks arrived and indicated that he had a hundred dollars and wanted to purchase a television. At some point in the evening, one of the guests, Donald Tyler, was asked to take Wicks home. Tyler testified that as he and Wicks left the house, Bohanan and Davis also left and approached them as they were getting into

Tyler's car. Tyler saw Bohanan hold a gun to Wicks' head and attempt to rob him. Tyler testified that when he saw the gun he got out of his car, ran back toward the house, and heard two gunshots, but he did not see Wicks get shot. Tyler and Wicks managed to get back into the house; Wicks later died of a gunshot wound to the chest. Shots were also fired into the house through a door, and James Patterson was injured by one of these bullets.

Davis was arrested the day after the shooting, and named Bohanan as the person who shot Wicks. He also told police that he and Bohanan had been in Bohanan's car the night of the murder. At trial, Bohanan was identified by Tyler and several witnesses as one of the men who had been in the house, and by Tyler as the man who approached Wicks with a gun and attempted to rob him.

A firearms examiner with the Arkansas State Crime Laboratory testified that the two .45 caliber bullets recovered from James Patterson and the door had been fired from the same weapon. Three .45 caliber shell casings were also recovered from the scene. The examiner testified that two of the shell casings were manufactured by Winchester and the third was a Remington-Peters brand.

At approximately 8:00 p.m. on April 18, 1994, Bohanan's car was located and confiscated by members of the Little Rock Police Department. One live .45 caliber cartridge manufactured by the Winchester company was recovered from the back seat of the car. Bohanan was arrested on April 18, 1994, about one hour after his car was confiscated, and was identified by Tyler in a live lineup conducted on April 20, 1994.

Bohanan's sole argument on appeal is that the trial court erred by allowing into evidence the bullet seized from his car. On the day of trial, Bohanan moved in limine to suppress the evidence of the bullet recovered from his car. He asserted that his car was improperly confiscated as an abandoned vehicle and searched prior to his arrest and that the cartridge was irrelevant and prejudicial. On appeal, Bohanan contends that his Fourth Amendment right to be free from illegal searches and seizures was violated by the warrantless search of his car. He argues that there was no reasonable cause to believe the car contained any evidence nearly three days after the offense was committed. He further argues that the evidence recovered was irrelevant and unfairly prejudicial.

The following evidence was presented at the suppression hear-

ing. On the afternoon of April 18, less than 48 hours after the incident, Larry Davis told officers that he and Bohanan had been in Bohanan's car before and after the shooting. Two officers then went to the area of 16th and Hanger Streets to look for Bohanan or his car. One of the officers testified that they observed a vehicle matching the description of Bohanan's car parked on the side of the street with a flat tire and no license plate. They observed the car for thirty to forty minutes and, when no one approached, they obtained the vehicle identification number by looking through the window and confirmed that the car was registered to Bohanan.

As it was getting dark, the officers decided to confiscate the car in order to search it, because the suspects had been in the car after a homicide. They did a cursory search at the scene, found nothing, and had the car towed. Crime scene specialists later processed the car and discovered the .45 caliber cartridge in a paper bag in the back seat of the car.

■ On appeal from a trial court's ruling on a motion to suppress evidence, this Court makes an independent determination based on the totality of the circumstances and reverses only if the trial court's ruling was clearly against the preponderance of the evidence. *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994). We must start with the basic premise that a warrantless search is unauthorized. *Cook v. State*, 293 Ark. 103, 732 S.W.2d 462 (1987). However, many exceptions to the Fourth Amendment have been found to exist, including an exception relating to automobiles. *Id.* Rule 14.1 of the Rules of Criminal Procedure, Vehicular Searches, provides in pertinent part:

> (a) An officer who *has reasonable cause* to believe that a moving or *readily movable vehicle is or contains things subject to seizure may, without a search warrant*, stop, detain, and *search the vehicle* and may seize things subject to seizure discovered in the course of the search *where the vehicle is*:
>
> (i) *on a public way* or waters or other area open to the public;
>
> (ii) in a private area unlawfully entered by the vehicle; or
>
> (iii) in a private area lawfully entered by the vehicle, provided that exigent circumstances require immediate detention, search, and seizure to prevent destruction or removal of the things subject to seizure.

(Emphasis added).

■■ This Court has concluded that reasonable cause as required by Rule 14.1 exists when officers have reasonably trustworthy information, which rises to more than mere suspicion, that the stopped vehicle contains evidence subject to seizure and a person of reasonable caution could be justified in believing an offense has been committed or is being committed. *Willett* v. *State*, 298 Ark. 588, 769 S.W.2d 744 (1989). Here, co-defendant Larry Davis informed officers that both he and Bohanan were in the car before and after the homicide, and it had been less than forty-eight hours since the crime occurred. As it is undisputed that a crime occurred, and the officers had more than a mere suspicion that the alleged assailants were in the vehicle before and after the crime, there was reasonable cause to believe the car contained things subject to seizure. *See Tackett* v. *State*, 307 Ark. 520, 822 S.W.2d 834 (1992); *Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980).

Bohanan also asserts that because the vehicle had a flat tire and was unoccupied, it was not moving or readily movable as required for a warrantless search pursuant to Rule 14.1. He further contends that because the crime occurred two days prior to the search, no exigent circumstances were present which would allow for removal of evidence from the vehicle.

■ We first observe that Bohanan's car, even with a flat tire, was a readily movable vehicle. The tire could have been changed in a matter of minutes, or the car could have been driven away even with a flat tire. Further, the rule does not require additional exigent circumstances where a vehicle is on a public way or other area open to the public, or in a private area unlawfully entered. Additional exigent circumstances requiring the immediate detention, search, and seizure are required only where the vehicle is in a private area lawfully entered.

We have upheld the warrantless search of an automobile pursuant to Rule 14.1 where the suspect is stopped and arrested while driving the vehicle. *Hudson* v. *State*, 316 Ark. 360, 872 S.W.2d 68 (1994). Certainly, if Rule 14.1 authorizes a search where the suspect is taken into custody at the time of the seizure of the automobile, the warrantless search of a vehicle where the suspect is still at large is even more justifiable. Bohanan argues that the police should have obtained a warrant to search the vehicle after receiving infor-

mation from Larry Davis. He suggests that the detectives who located the vehicle could have called other officers to continue surveillance of the car while a search warrant was obtained. Of course this would be true for any vehicle, and no warrantless vehicular search would be authorized if such measures were required.

The cases relied upon by Bohanan can be readily distinguished. In *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975), this Court held the warrantless search and seizure of appellant's vehicle after his arrest was illegal. However, the vehicle was parked on private property and the Court said that there were no exigent circumstances since the car was not stopped and abandoned on the open highway and there was no way that the appellant could have had access to the car after he was arrested. In *Tillman* v. *State*, 271 Ark. 552, 630 S.W.2d 5 (1982), this Court upheld the warrantless search of Tillman's vehicle for stolen goods after Tillman had been apprehended in the vehicle and handcuffed.

In short, Rule 14.1 simply does not require a search warrant in the circumstances presented in this case. A warrantless search of the car would clearly have been authorized had Bohanan been apprehended in or near the vehicle. It stands to reason that such a search was authorized when Bohanan was still at large. It further does not matter whether the search is conducted at the scene or after the vehicle has been seized and removed to another location. As noted in 3 Wayne LaFave, *Search and Seizure*, § 7.2(b) at 468-469 (3rd ed. 1996):

> [W]henever a warrantless at-the-scene search of a vehicle would be permissible, the police may instead seize the car and search it shortly thereafter at the station. As the Court put it in *Michigan* v. *Thomas*,
>
> > the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

One explanation for this, offered in *United States* v. *Ross*, is

that "if an immediate search on the scene could be conducted but not one at the station if the vehicle is impounded, police often simply would search the vehicle on the street – at no advantage to the occupants, yet possibly at certain costs to police."

In summary, we hold that the trial court correctly determined that Ark. R. Crim. P. 14.1 authorized a warrantless search of Bohanan's vehicle.

Bohanan also asserts that the trial court erred in introducing the bullet into evidence because it was irrelevant and unfairly prejudicial. He contends that nothing connects the bullet recovered from his car to the alleged offense. The trial court concluded that it was relevant that the victim was killed with a .45 caliber bullet and Bohanan had a .45 caliber bullet in his car.

According to Ark. R. Evid. 401, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Owens* v. *State*, 313 Ark. 520, 856 S.W.2d 288 (1993). A ruling on the relevancy of the evidence is discretionary and will not be reversed unless the trial court abused its discretion. *Clay* v. *State*, 318 Ark. 122, 883 S.W.2d 822 (1994). We cannot say that the trial court in this instance abused its discretion. A .45 caliber bullet and three .45 caliber shell casings were recovered from the scene, including two which were manufactured by the Winchester Cartridge Company; a .45 caliber cartridge manufactured by the Winchester Cartridge Company was recovered from Bohanan's car. It was thus more probable that Bohanan had access to a .45 caliber weapon at the time of the homicide.

Bohanan further submits that the introduction of the bullet was unduly prejudicial and created a danger that "the jury would attach undue significance to this evidence and conclude that the appellant was somehow involved in the alleged offense." Rule 403 of the Arkansas Rules of Evidence allows a trial court to exclude relevant evidence if its probative value is outweighed by the possibility of confusion of issues. *Owens* v. *State*, 318 Ark. 61, 883 S.W.2d 471 (1994). This weighing is a matter left to the trial court's sound discretion and will not be reversed absent a showing of manifest abuse. *Id.* The appellant has simply failed to establish an

abuse of discretion in this instance.

Because Bohanan was sentenced to life imprisonment without parole, we must review the record for prejudicial errors objected to by Bohanan but not argued on appeal. *See* Ark. Sup. Ct. R. 4-3(h). We discuss one such issue not raised in the briefs of either Bohanan or the state.

Donald Tyler was the only witness who identified Bohanan as the person who held a gun and attempted to rob Wicks. Prior to trial, Bohanan moved to suppress the fact that Tyler identified him in a physical lineup. After a hearing was conducted, the motion was denied.

On April 17, 1994, the day after the shooting, Tyler was shown a lineup which consisted of six photographs; Bohanan's photograph was not included. Tyler picked number "5" and stated on the "spread form" that he was about 85 percent sure. He also stated, "I can identify him in person." In a second photographic lineup, conducted after Davis had implicated Bohanan, Tyler identified photograph number six as being "similar" to the person he saw pull the gun on Wicks. In that lineup, photograph number two was a photograph of Bohanan. On April 20, a live physical lineup was conducted. Tyler "immediately" identified Bohanan as the shooter during the physical lineup.

Tyler testified that he saw Bohanan inside the home while the lights were on and that he saw the assailant for two or three seconds at the time of the incident. Tyler further testified a street light across the street was shining down in the area of the car. In addition, he stated that the assailant did not have anything covering his face. Finally, Tyler testified that the picture of Bohanan in the second photographic lineup seemed blurry and dark and the two photographic lineups did not influence his decision in viewing the physical lineup.

A pre-trial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the criminal. *Chenowith v. State*, 321 Ark. 522, 905 S.W.2d 838 (1995). Even if the identification technique is impermissibly suggestive, it is for the trial court to determine if there are sufficient aspects of reliability surrounding the identification to permit its use as evidence, and then it is for the jury to decide the

weight the identification testimony should be given. *Id.* This Court does not reverse a ruling on the admissibility of an identification unless it is clearly erroneous and will not inject itself into the process of determining reliability unless there is a very substantial likelihood of misidentification. *Id.* Further, the following factors are to be examined to determine reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description; (4) the level of certainty; and (5) the time lapse between the crime and confrontation. *Id.*

Here, Tyler viewed Bohanan inside the house and for several seconds at the time of the incident. Tyler never positively identified someone other than Bohanan, and he continued to maintain he could identify the assailant if he saw him in person. That is, in fact, what occurred — Tyler immediately identified Bohanan when the physical lineup was conducted. We cannot say the trial court was clearly erroneous in concluding the identification testimony was reliable.

The record has been examined pursuant to Supreme Court Rule 4-3(h) for other reversible error, and none has been found.

Affirmed.

JESSON, C.J., and BROWN, J., concur.

ROBERT L. BROWN, Justice, concurring. Rule 14.1 of the Arkansas Rules of Criminal Procedure deals with exigent circumstances that might justify a vehicular search when reasonable cause for that search exists. One such exigent circumstance pertains to a search of a "moving or readily movable vehicle." Ark. R. Crim. P. 14.1(a). That is the section on which the majority bottoms its conclusion that no search warrant was necessary in this case. I disagree.

It is undisputed that the vehicle involved in this case had a flat tire. It had also been under observation by police officers for some 40 minutes. During this surveillance, there was no sign of activity around the vehicle or any attempt to move the car. Had there been, the police officers would have been well within their rights to conduct a Rule 14.1 search. But there was none. Failing efforts by someone to move the car, a search warrant should have been obtained. This could have been easily accomplished.

The majority cites *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994), to uphold the warrantless search. But *Hudson* is inapposite authority because the defendant was in his car driving when his vehicle was stopped. Moreover, it does not follow, as the majority contends, that because a suspect is at large, this renders a search of his car an emergency matter. What would have rendered the situation exigent was if the Bohanan car could have been readily moved and any evidence in the car, as a result, lost. Ark. R. Crim. P. 14.1; *see also Tillman v. State*, 271 Ark. 552, 609 S.W.2d 340 (1980).

I would affirm, however, because proof of Bohanan's culpability, apart from the .45 caliber cartridge found in the car, was considerable, and any error resulting from evidence amassed from an illegal search was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967); *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995); *Vann v. State*, 309 Ark. 303, 831 S.W.2d 126 (1992). Multiple witnesses placed Bohanan at the scene, and Donald Tyler witnessed the attempted robbery and saw Bohanan place a gun at the victim's head. Immediately thereafter, witnesses attested to the fact that the victim had been shot and had made his way into a house. A second victim, James Patterson, was then shot through the door of that same house and wounded. The .45 caliber cartridge found in the car was, in reality, a very small facet of the State's case. Accordingly, I concur in the affirmance.

JESSON, C.J., joins.