Dashujuahn DANZIE *v.* STATE of Arkansas

CR 95-1309                                      930 S.W.2d 310

Supreme Court of Arkansas
Opinion delivered September 23, 1996

*Janet L. Thornton*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Dashujuahn Danzie, was convicted of capital murder for the death of Loice M. Houser and was sentenced by the Union County Circuit Court to life imprisonment in the Arkansas Department of Correction without the possibility of parole. This court has jurisdiction over the appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2). On appeal, Danzie challenges the sufficiency of the evidence presented at trial, the composition of the petit jury and jury venire, and the trial court's denial of the use of expanded juror questionnaires. We find no merit to any of these arguments and affirm the judgment of conviction.

On October 27, 1994, the body of Loice M. Houser was found lying facedown in a ditch full of water, alongside a Union County road near Huttig, Arkansas. There was a cut above the victim's left eye, and the victim's left pants pocket was turned inside out and empty. The victim's pickup truck was found in the ditch near the body, in gear with the motor still running. Appellant's thumb print was discovered on the quarter panel of the truck, immediately behind the left door. Two witnesses observed Appellant near the scene of the crime around the time of death.

Appellant admitted that he had been at the crime scene and

had looked inside the truck, but denied seeing the victim's body lying in the ditch nearby. In contrast, the two men who discovered the body stated that, upon walking near the truck, they immediately noticed the victim's body in the ditch. Officers later learned that the victim had approximately $275.00 cash in his possession shortly before he was killed. Upon his arrest, Appellant had approximately $216.00 cash. Appellant was charged with capital murder pursuant to the felony-murder provision, and the State sought the death penalty at trial.

## I. SUFFICIENCY OF THE EVIDENCE

Appellant argues there was insufficient evidence presented at trial to demonstrate either that the victim died as the result of a criminal act or that he caused the victim's death. We do not reach this argument as Appellant did not properly preserve the issue for appeal. At the close of the State's case, Appellant made a motion for directed verdict on the grounds that there was insufficient evidence to prove that the victim died as a result of a homicide and that Appellant in any way caused the victim's death. The court denied Appellant's motion. Appellant renewed his motion at the close of all the evidence; however, he did not obtain a ruling from the court. His failure to obtain a ruling on the renewed motion is fatal.

This court has held numerous times that the burden of obtaining a ruling is on the movant, and objections and questions left unresolved are waived and may not be relied upon on appeal. *Williams* v. *State*, 289 Ark. 69, 709 S.W.2d 80 (1986). In *Donald* v. *State*, 310 Ark. 197, 833 S.W.2d 770 (1992), a case very similar to this one, the appellant moved for a directed verdict at the close of the State's case, and the motion was denied. Donald renewed his motion at the close of all the evidence, as required by Ark. R. Crim. P. 36.21(b), but he failed to obtain a ruling from the court. In that decision, we held that, "the burden of obtaining a ruling is on the movant, and the failure to secure a ruling constitutes a waiver, precluding its consideration on appeal." *Id.* at 198, 833 S.W.2d at 771 (citations omitted). Because Appellant failed to obtain a ruling from the court on his renewed motion for directed verdict, he has not preserved the issue of sufficiency of the evidence for appeal.

## II. EXPANDED JUROR QUESTIONNAIRES

Appellant next argues that the trial court erred in refusing his

request to provide jurors with an expanded questionnaire. Appellant reasons that because the trial court refused to allow the use of such questionnaires, and because the trial court later cut short Appellant's voir dire examination, he was denied a fair trial. Appellant's argument fails on both grounds.

In the first instance, Appellant is incorrect in his assertion that the trial court interrupted his counsel during voir dire because counsel's examination of the potential jurors was too lengthy. The record clearly reflects that the only time counsel was "interrupted" was when the State made an objection to the form of a question being asked by Appellant's counsel. In ruling on the objection, the trial court admonished counsel about asking improper questions and questions that had already been asked. The trial court further informed counsel that the court would interrupt her if she continued to ask improper or repeated questions. We are not at all persuaded that the trial court's actions restricted Appellant's voir dire examination. Moreover, Appellant has not demonstrated how he was prejudiced by this admonishment.

Similarly, we are not persuaded that the trial court erred in refusing to allow the use of expanded pretrial juror questionnaires. Appellant's argument in support of the use of expanded juror questionnaires is correlative to that normally relied upon in support of a motion for individually sequestered voir dire. Appellant argues that in cases of capital murder where the death penalty is sought, jurors will undoubtedly be questioned extensively about their positions on the death penalty. Appellant further argues that in this particular case there were also concerns about the jurors' feelings of racial bias or prejudice, as Appellant is a black man and the victim was a white man. Appellant asserts that because feelings about the death penalty and race are strong and personal, jurors would feel more comfortable answering questions about them privately. Appellant further reasons that if jurors feel more comfortable they will be more truthful and forthcoming in their answers.

Appellant made his motion for expanded juror questionnaires during a pretrial hearing. The trial court initially denied Appellant's motion, reasoning that it was the court's experience that jurors felt more comfortable as a group fielding attorneys' questions and listening to responses from other jurors than they did being examined individually. The trial court did, however, state that it may reconsider the ruling once Appellant submitted a sample ques-

tionnaire. Appellant did submit a sample questionnaire, but he did not obtain the trial court's ruling on the issue. The State argues that Appellant's failure to ultimately obtain a ruling on the issue bars his argument on appeal. We believe, for purposes of this appeal, that the trial court's initial denial was a final ruling, and as such, sufficiently preserves this issue for appeal.

The State additionally argues that this issue is nonetheless procedurally barred because Appellant failed to abstract the proposed juror questionnaire submitted to the trial court. Our recent case law does not, however, support the State's position. In *Chenowith* v. *State*, 321 Ark. 522, 905 S.W.2d 838 (1995), we held that the appellant's failure to abstract that portion of the record revealing the terms of his motion for directed verdict did not preclude this court from reviewing the issue on appeal. We concluded that, "[w]e would not address this point of appeal but for our Rule 4-3(h) which requires that we examine the record of trial in life imprisonment cases and review all errors prejudicial to the appellant." *Id.* at 524, 905 S.W.2d at 839. Likewise, in *Owens* v. *State*, 325 Ark. 110, 926 S.W.2d 650 (1996), we held that for cautionary reasons, pursuant to Rule 4-3(h), we would address appellant's challenge to the trial court's refusal to give a jury instruction even though the appellant failed to abstract the instruction given, as the case involved a sentence of life imprisonment. In the case at hand, the omission from the abstract of the proposed questionnaire does not inhibit our inquiry, as we are convinced that the decision to allow the use of expanded juror questionnaires lies within the sound discretion of the trial court.

Arkansas Rule of Criminal Procedure 32.1 provides:

The circuit court shall require members of petit jury panels to complete written questionnaires setting forth the following information:

(i) age;
(ii) marital status;
(iii) extent of education;
(iv) occupation of juror and spouse; and
(v) prior jury service.

Upon request, such questionnaires shall be made available by the clerk of the court to the defendant or his counsel and the prosecuting attorney. Upon a showing of good cause, addi-

tional information may be furnished regarding jurors by order of the court.

Rule 32.2 provides for voir dire examination of potential jurors and specifically grants the trial judge the power to "permit such additional questions by the defendant or his attorney and the prosecuting attorney *as the judge deems reasonable and proper.*" (Emphasis added.) We have consistently interpreted that Rule as providing trial judges with wide latitude in conducting and monitoring voir dire. In *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992), we held that the extent and scope of voir dire is generally within the sound discretion of the trial court, and that we will not reverse absent a clear abuse of this discretion. *See also Bryant v. State*, 304 Ark. 514, 803 S.W.2d 546 (1991); *Johnson v. State*, 298 Ark. 617, 770 S.W.2d 128 (1989). Furthermore, in *Heffernan v. State*, 278 Ark. 325, 645 S.W.2d 666 (1983), we held that sequestration of the jury for purposes of voir dire is also within the discretion of the trial court.

We are convinced that Rule 32.2 is controlling of this issue since the concept of expanded juror questionnaires is merely a written form of voir dire examination, and as such, the decision to deny Appellant's motion was well within the trial court's discretion. We are further satisfied that Appellant was given ample opportunity to thoroughly examine potential jurors during voir dire. Because the trial court's ruling was discretionary, and because Appellant has failed to demonstrate that he was prejudiced or that the trial court abused its discretion, we affirm the trial court's ruling.

### III. MOTION TO QUASH JURY

Appellant's final argument is that the trial court erred in denying his motion to quash the petit jury and the jury venire on the grounds that blacks were systematically excluded from jury participation. Appellant argues that the Arkansas system of using voter-registration records to summon potential jurors results in the deprivation of a fair cross-section of the community, depriving an accused of a trial by a jury of his peers. Appellant acknowledges in his brief that this court's previous rulings have consistently upheld our system of selecting potential jurors, but he urges us to abandon those holdings and declare the system unconstitutional. This we are unwilling to do.

The selection of a petit jury from a representative cross-

section of the community is an essential component of the Sixth Amendment right to a jury trial. *Taylor* v. *Louisiana*, 419 U.S. 522 (1975). There is no requirement, however, that the petit jury actually seated in a defendant's case mirror the community and reflect the various distinctive groups in the population. *Id*; *Mitchell* v. *State*, 299 Ark. 566, 776 S.W.2d 332 (1989). Appellant puts much emphasis on the fact that, although there were blacks on the jury venire, there were none seated on his petit jury. Appellant urges this court to conclude that this demonstrates a systematic exclusion of black jurors. Our case law does not support this position. In *Walton* v. *State*, 279 Ark. 193, 650 S.W.2d 231 (1983), we held that, "[m]erely because no member of a party's race is on a jury is not in itself cause to quash a jury." *Id*. at 202, 650 S.W.2d at 235 (1983) (citing *Lewis* v. *Pearson*, 262 Ark. 350, 556 S.W.2d 661 (1977)). Further, in *Mitchell*, we stated that the mere fact that there were no black persons on the jury panel from which Mitchell's jury was selected did not mean the jury was selected in a way that would not result in a fair cross-section of the community. Thus, the fact that no black jurors were seated in Appellant's case is of little significance, provided that potential jurors were selected in a nondiscriminatory way.

  Pursuant to the Equal Protection Clause of the United States Constitution, a defendant in a criminal case is entitled to require that the State not deliberately or systematically deny to members of his race the right to participate, as jurors, in the administration of justice. *Sanders* v. *State*, 300 Ark. 25, 776 S.W.2d 334 (1989); *Waters* v. *State*, 271 Ark. 33, 607 S.W.2d 336 (1980). Nevertheless, the Equal Protection Clause is not violated unless the State has engaged in the purposeful or deliberate denial to blacks, on the bases of their race, of participation in the administration of justice by selection for jury service. *Sanders*, 300 Ark. 25, 776 S.W.2d 334. Correspondingly, it is well established that the appellant carries the burden of proving the systematic exclusion of black jurors from the venire. *Walker* v. *State*, 314 Ark. 628, 864 S.W.2d 230 (1993).

  The United States Supreme Court set the standard for such cases in *Duren* v. *Missouri*, 439 U.S. 357 (1979), and this court has adhered to that standard. *See, e.g., Walker*, 314 Ark. 628, 864 S.W.2d 230; *Sanders*, 300 Ark. 25, 776 S.W.2d 334. In *Duren*, the Court stated that in order to establish a prima facie violation of the fair-cross-section requirement of the Sixth Amendment, an appel-

lant must show the following: (1) The group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren*, 439 U.S. at 364. Once the appellant makes a prima facie showing of racial discrimination in the jury-selection process, the burden shifts to the State to justify its procedure. *Sanders*, 300 Ark. 25, 776 S.W.2d 334.

In the case at hand, the first prong of the *Duren* test is clearly met, as blacks represent a distinctive group in the community. As for the second prong of the test, Appellant has failed to offer any proof, other than counsel's conflicting assertions before the trial court[1] and several judicially noticed facts concerning the composition of the population and the number of registered voters in Union County.[2] Appellant has not provided this court with any credible evidence as to the composition of the jury venire called in his case, let alone the entire jury pool or master list from which each venire is chosen.

The test provided in *Duren* requires a fair and reasonable representation of the distinctive group in *every* venire from which juries are selected, not just the particular venire summoned at a defendant's trial. 439 U.S. at 364-66. Without such data, we are left to speculate as to the number of blacks on every jury venire in Union County, and we decline to do so. Lastly, Appellant has produced no evidence which demonstrates that the alleged under-representation of blacks is due to a systematic exclusion in the jury-selection system itself. To the contrary, Appellant argues that it is the nature of the charge of capital murder and the fact that the death penalty is an available punishment that systematically excludes

---

[1] The abstract reflects that during voir dire, appellant's counsel first stated to the trial court that there were fifteen blacks on the jury panel, and at a later time, counsel stated that there were thirteen blacks on the panel.

[2] Pursuant to appellant's motion, the trial court took judicial notice of the following: (1) Union County has a population of 46,719, of which 33,905 are over age eighteen; (2) Union County has 23,070 registered voters; (3) thirty-two percent of the population of Union County who would be eligible to register to vote have not done so; (4) Union County has 14,061 black residents; and (5) thirty percent of Union County's population is black.

blacks from jury participation.

Appellant argues that black persons as a group are more inclined to oppose the death penalty than white persons. Appellant did not provide the trial court, nor does he provide this court, with any evidence or data in support of this argument; he merely points to the fact that each black person called during voir dire was not seated on the petit jury due to concerns about the death penalty. During voir dire, eight blacks were selected to participate in the examination process, seven of which were ultimately excused for cause (without objection from Appellant) because of their inability to consider the death penalty as a punishment. The remaining black person was peremptorily struck by the State because she expressed some hesitancy to impose the death penalty. Appellant made a *Batson* challenge to the juror struck; however, the trial court was convinced that the State had struck the juror for racially neutral reasons concerning her personal opposition to the death penalty.

Excusing jurors because of their refusal to consider the death penalty in capital cases is not evidence of systematic exclusion of a distinctive group in the community. The United States Supreme Court held:

> "Death qualification," unlike the wholesale exclusion of blacks, women, or Mexican-Americans from jury service, is carefully designed to serve the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial."

*Lockhart* v. *McCree*, 476 U.S. 162, 175-76 (1986). Thus, even had Appellant provided this court with persuasive authority that blacks as a group more often refuse to impose the death penalty in capital cases, we would nonetheless affirm the trial court's ruling because of the State's legitimate interest in seating only those jurors who can follow the provisions of the law, including the consideration of imposition of the death penalty. Appellant has failed to meet his burden of demonstrating that his constitutional rights were violated, and therefore, we conclude the trial court did not err in refusing to quash Appellant's jury.

We have further reviewed the record in accordance with Ark. Sup. Ct. R. 4-3(h), and we have found no errors with respect to rulings on objections or motions adverse to Appellant.

Affirmed.

DUDLEY, BROWN, and ROAF, JJ., concur.

ROBERT H. DUDLEY, Justice, concurring. I concur in affirming the trial court, but would reach appellant's argument involving the sufficiency of the evidence. Appellant made a specific motion for a directed verdict at the close of the State's case. The trial court denied the motion. Appellant renewed his motion at the close of all of the evidence, but the trial court did not announce a ruling. Rather, the trial court charged the jury. The majority opinion cites valid precedent for its holding that appellant failed to obtain a ruling on the motion and, as a result, did not preserve the issue of sufficiency of the evidence.

I have no disagreement with the well-established rule that the failure to obtain a ruling constitutes a waiver of an issue, but it does not seem appropriate to apply the rule under the facts of this case. When a lawyer renews a motion for a directed verdict at the close of all the evidence and the trial judge turns away from him, faces the jury, and begins to instruct the jury, the trial judge has denied the motion by his actions.

The real difficulty with the holding of the majority opinion and its precedent is that it applies to all cases, civil as well as criminal. Consequently, in all cases when a trial judge does not make a ruling aloud but rather begins the charge to the jury, it is necessary for the attorney who made the motion to immediately interrupt the charge to the jury and obtain a ruling aloud. Motions for directed verdict have traditionally been made and ruled upon outside the hearing of the jury; now, the interruption must necessarily take place in front of the jury with prejudice possibly resulting to the movant.

For this reason, I would hold that the trial judge denied the motion when he said nothing, but began to charge the jury. Even so, the result of this case would be the same, for there was more than sufficient evidence to prove that appellant was guilty of capital murder.

BROWN and ROAF, JJ., join in this concurrence.